UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DARRYL S. DUGAS and MARSHA
DUGAS, his wife,

    Plaintiffs,

v.

3M COMPANY, et al.,

    Defendants.
_____/

Case No: 3:14-cv-1096-J-39JBT

## ORDER

**THIS CAUSE** is before the Court on Defendants' Motions to Dismiss Plaintiffs' Second Amended Complaint [Docs. 141, 145, 154, and 156; Motions]. Plaintiffs responded with their Consolidated Brief in Opposition [Doc. 159]. Accordingly, this matter is ripe for review.

### I.    BACKGROUND[1]

Plaintiffs' Second Amended Complaint ("Second Amended Complaint") sets forth four causes of action: (1) negligence; (2) strict liability; (3) fraudulent concealment; and (4) loss of consortium. The gravamen of Plaintiffs' Second Amended Complaint is that Plaintiff, Darryl Dugas was exposed to asbestos fibers which led to his development of malignant mesothelioma. Mr. Dugas' exposure to asbestos came from his contact with asbestos-containing products during his tenure with the United States Navy. The

---

[1] In considering a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Second Amended Complaint must be accepted as true and construed in the light most favorable to Plaintiff. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

products were either mined, processed, supplied, manufactured, or distributed by Defendants, or their predecessors.[2] Following Mr. Dugas's filing of his Second Amended Complaint, Defendants, 3M Company ("3M"), United Technologies Corporation ("UTC"), Shell Oil Company ("Shell"), and IMO Industries, Incorporated ("IMO") (collectively, "Defendants") filed motions to dismiss arguing that Plaintiffs' Second Amended Complaint fails to state a claim upon which relief can be granted, and fails to plead fraudulent concealment with the requisite level of specificity.

Specifically, Defendant UTC argues that Plaintiffs' Second Amended Complaint fails to allege sufficient facts from which a plausible claim for relief can be ascertained as to all claims. Defendants 3M and Shell focus their Motions to Dismiss on Count Three, arguing that Plaintiffs' factual allegations are inadequate to state a claim for fraudulent concealment.[3] Defendant IMO also focuses its Motion to Dismiss on Count Three of Plaintiffs' Second Amended Complaint, but adds the argument that Count Four should fail as a derivative claim, if Count Three fails.

## II. DISCUSSION

*1. Florida's Asbestos and Silica Compensation Fairness Act*

Preliminarily, the Court considers an argument raised by Honeywell International Incorporated ("Honeywell") as adopted and incorporated in Defendants Shell's and 3M's

---

[2] Subsequent to the filing of the Defendants' Motions, the parties have stipulated that the claims remaining against 3M Company ("3M") stem only from Mr. Dugas' use of 3M's safety masks which failed to protect Mr. Dugas from asbestos exposure. (Doc. 285).

[3] 3M and Shell also "adopt[] and incorporate[]" the other Defendants' motions to dismiss. The Court will therefore consider the other Motions to Dismiss where applicable to 3M and Shell.

Motions to Dismiss.[4] The argument advanced by Honeywell is that Plaintiffs' Second Amended Complaint should be dismissed for failure to comply with Section 774.205, Florida Statutes. Section 774.205 sets forth specific and heightened pleading requirements for plaintiffs alleging a claim involving asbestos or silica. Plaintiffs contend that Section 774.205 does not apply in this case because it conflicts with the concept of "notice pleading" contemplated by the Federal Rules of Civil Procedure ("Rule(s)"). This case was removed from state court pursuant to the federal officer removal statute, 28 U.S.C. § 1442. As with cases removed on the basis of diversity jurisdiction, cases removed on the basis of Section 1442 apply state substantive law and federal procedural law. Kolibash v. Comm. on Legal Ethics of W. Virginia Bar, 872 F.2d 571, 576-77 (4th Cir. 1989) ("The federal officer removal statute permits a state action to be adjudicated on the merits in a federal court 'free from local interests or prejudice,' and a federal officer is therefore guaranteed a federal forum in which federal rules of procedure will be applied.") (quoting Arizona v. Manypenny, 451 U.S. 232, 241-42, (1981)).

To aid courts in determining whether a law is substantive or procedural, "the Supreme Court developed a two-part test in Hanna."[5] Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1357 (11th Cir. 2014) (quotation and citation omitted). Where a federal law sought to be applied is a Federal Rule of Civil Procedure, "the district court must first decide whether the [rule] is sufficiently broad to control the issue before the court." Royalty Network, Inc., 756 F.3d at 1358 (quotation and citation omitted). "If the federal

---

[4] Honeywell and Plaintiffs previously agreed to dismiss Honeywell from this case. (Doc. 262).

[5] Hanna v. Plumer, 380 U.S. 460, 465 (1965).

procedural rule is sufficiently broad to control the issue and conflicts with the state law, the federal procedural rule applies instead of the state law." Id.

In this case, the state law, Section 774.205, requires that a plaintiff alleging asbestos exposure include with his complaint, among other things, "a written report and supporting test results constituting prima facie evidence of the exposed person's asbestos-related . . . physical impairment meeting the requirements of s. 774.204(2), (3), (5), or (6)." Fla. Stat § 774.205(2). Federal Rule of Civil Procedure 8, on the other hand, only requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" If this Court required Plaintiffs to meet Section 774.205's dictates, it would require a heightened pleading requirement not contemplated by the Federal Rules of Civil Procedure. Such an approach has already been considered and rejected by the Eleventh Circuit relating to punitive damages. Cohen v. Office Depot, Inc., 184 F.3d 1292, 1298 (11th Cir. 1999), vacated on other grounds, 204 F.3d 1069 (11th Cir. 2000) ("A state law may conflict with a Federal Rule even where it violates no affirmative command or requirement of the rule, if the Federal Rule 'occupies the statute's field of operation.'") (quoting Hanna, 380 U.S. at 470). The Court in Cohen held that a conflict exists between Federal Rule of Civil Procedure 8, which allows a plaintiff to include in a complaint a request for all the relief sought and a state law that requires leave of the court before a request of punitive damages can be made. Id. Because the court in Cohen found that pleading rules such as Federal Rule of Civil Procedure Rule 8 "relate[] to the practice and procedure" of federal courts, the Court held that Rule 8 controlled and the state law did not apply. Id. at 1299 (quotation and citation omitted).

Indeed, another court in this district, relying on Cohen and Hanna held that a plaintiff's failure to meet the pleading requirements found in Section 774.205 did not doom his case because Section 774.205 conflicted "with the basic notice pleading requirements of Federal Rule of Civil Procedure 7 through 10 . . . ." Hughes v. Am. Tripoli, Inc., No. 2:04CV485FTM29DNF, 2006 WL 1529051, at *3 (M.D. Fla. May 30, 2006). The court in Braddock v. Orlando Reg'l Health Care Sys., Inc., 881 F. Supp. 580, 582 (M.D. Fla. 1995), came to a similar conclusion when it held that Florida's heightened pleading requirements in medical malpractice cases conflict with, and thus give way to, Federal Rule of Civil Procedure 8 in cases sitting in federal court. The Court finds the reasoning of Braddock, Cohen, and Hughes instructive. Federal Rule of Civil Procedure 8 allows a plaintiff's short and plain statement of the facts which establish the plaintiff's right to relief to suffice. Florida's heightened pleading requirement in asbestos cases prohibits what federal procedural law allows, which creates a conflict between Florida's Section 774.205 and Federal Rule of Civil Procedure 8. Because Florida's pleading requirement in asbestos cases conflicts with established federal procedural law, Florida's heightened standard must yield.

    2.    *Negligence and Loss of Consortium*

Defendants Shell, UTC, and 3M also contend that Mr. Dugas' negligence count should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Mr. Dugas' allegations of negligence against them "are almost identical." (Doc. 145 at 5). To survive a Rule 12(b)(6) motion, a complaint is not required to allege painstakingly specific factual allegations, "but only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (quotation and citation omitted).

Florida law requires a claim of negligence to allege "that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages." Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001) (citation omitted). "The determination of the existence of a duty of care . . . is a question of law," Goldberg v. Florida Power & Light Co., 899 So. 2d 1105, 1110 (Fla. 2005), which generally arises "[w]henever a human endeavor creates a generalized and foreseeable risk of harming others." Jennings v. BIC Corp., 181 F.3d 1250, 1257 (11th Cir. 1999) (quotation and citations omitted). Once formed, the duty requires the creator of the risk "either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." Id. A breach of that duty occurs when the person creating the risk of harm to others fails to take the same precautions another reasonable and careful person in similar circumstances would have taken. Faddish v. Buffalo Pumps, 881 F. Supp. 2d 1361, 1367 (S.D. Fla. 2012) (citations omitted).

Regarding Defendant 3M, Mr. Dugas alleges that 3M knew or should have known that users of its safety masks, like plaintiff, expected the masks to protect against a variety of dangerous airborne particles, like asbestos. Despite 3M's knowledge, 3M failed to properly design, manufacture, and sell its safety masks to protect against

asbestos fibers. 3M failed to warn its users of the dangers of asbestos, including that 3M's masks would not provide adequate protection from asbestos. Further, when 3M became aware of the inadequacies of its safety masks for those working with and around asbestos, 3M failed to recall and retrofit its safety masks. As a result of 3M's actions (or lack thereof), Mr. Dugas was exposed to deadly asbestos fibers which caused Mr. Dugas to develop malignant mesothelioma. The disease has caused Mr. Dugas to incur substantial medical bills along with substantial pain and suffering. Accordingly, Mr. Dugas has sufficiently alleged facts upon which he may be entitled to relief under a claim of negligence against 3M.

Regarding Defendants Shell and UTC, Mr. Dugas alleges they were responsible for the mining, processing, supplying, manufacturing, and distribution of asbestos containing aircraft components.[6] Defendants knew of or should have known that the products posed serious health risks to their intended users. Mr. Dugas claims he came into contact with those products while performing routine aircraft maintenance in his role as an aircraft structural mechanic with the United States Navy between 1967 and 1971. Further, Defendants negligence in, among other things, designing their products to contain asbestos and in failing to warn of the dangers of asbestos caused Mr. Dugas to come into contact with the asbestos which led to the development malignant mesothelioma. Based on these facts, Mr. Dugas has sufficiently stated a claim for relief under a theory of negligence against Defendants Shell and UTC. Furthermore, as Mr. Dugas has stated a viable claim of negligence against all Defendants, Mrs. Dugas'

---

[6] Plaintiff specifically alleges that Shell produced asbestos containing Epon aircraft adhesives while UTC produced asbestos containing TF-30 aircraft engines.

claim of loss of consortium survives as well. Gates v. Foley, 247 So. 2d 40, 45 (Fla. 1971) ("[T]he wife of a husband injured as a proximate result of the negligence of another shall have a right of action against that same person for her loss of consortium.").

        3.    *Strict Liability*

Defendants 3M, Shell, and UTC argue that Mr. Dugas' claim under a theory of strict liability should also be dismissed. Defendants concede that the Second Amended Complaint states all the elements of strict liability for design defect and failure to warn claims, but nonetheless contend that the Second Amended Complaint's specificity is inadequate. To state a claim under a theory of strict liability, a plaintiff needs to [1] "establish the manufacturer's relationship to the product in questions, [2] the defect and unreasonably dangerous condition of the product, and [3] the existence of the proximate causal connection between such condition and the user's injuries or damages." West v. Caterpillar Tractor Co., 336 So. 2d 80, 87 (Fla. 1976).

Regarding 3M, Plaintiffs charge 3M with the design, manufacture, and distribution of safety masks used by Mr. Dugas while he was in the Navy. The masks were allegedly defective because they failed to adequately protect users, like Mr. Dugas, from certain hazardous airborne particulates, like asbestos. Additionally, 3M allegedly failed to provide adequate warning that the masks would not protect users from asbestos. That defect and the failure to warn led to Mr. Dugas inhaling asbestos fibers which caused Mr. Dugas to develop malignant mesothelioma. These facts are specific as to 3M's relationship to the product at issue, the defect in the product, the lack of accompanying warning, and how that defect caused Mr. Dugas' injury. Accordingly,

Mr. Dugas has plead a claim for recovery pursuant to a theory of strict liability with sufficient specificity.

As to Defendants Shell and UTC, Plaintiffs state that Shell and UTC designed aircraft components which contained asbestos. Those components were defective because they contained asbestos fibers, which were released when the products were sanded and cleaned in the course of their intended use. At the time of the asbestos-containing components' manufacture, there existed alternative non-asbestos-containing components which could act as viable substitutes for the asbestos-containing components. The exposure to the released asbestos fibers caused Mr. Dugas to develop mesothelioma. These facts establish (1) the relationship of the products to Defendants, (2) that they were defective in that their normal use resulted in the release of asbestos fibers, which (3) caused Mr. Dugas to develop mesothelioma. Defendants' argument that Mr. Dugas does not state with greater specificity the particular design defect which resulted in the release of asbestos fibers is unavailing. See Egbebike v. Wal-Mart Stores E., LP, No. 3:13-CV-865-J-34MCR, 2014 WL 3053184, at *2 (M.D. Fla. July 7, 2014) (holding that an allegation that a mattress was defective because it "popped, producing a large hole" sufficiently described a defect for purposes of a strict products liability claim). That a specific product released asbestos fibers in the course of its intended use, and without warning according to Mr. Dugas, adequately describes a defect in both the design of the product and in the warning of the hazards associated with the foreseeable use of the product.

    4.    *Fraudulent Concealment*

        a.    Federal Rule of Civil Procedure 9(b)

Defendants 3M, Shell, UTC, and IMO contend that Mr. Dugas' claims of fraudulent concealment should be dismissed because Mr. Dugas' allegations of fraudulent concealment are stated with insufficient particularity and because Defendants had no duty to disclose the risks of asbestos to Mr. Dugas. Under Florida law, a claim for fraudulent concealment is the same as one for fraudulent misrepresentation. Grills v. Philip Morris USA, Inc., 645 F. Supp. 2d 1107, 1119 (M.D. Fla. 2009). A claim for fraudulent misrepresentation may survive only when a plaintiff can show:

> (1) a misrepresentation of material fact or suppression of the truth;
>
> (2) [a] knowledge of the representor of the misrepresentation, or [b] representations made by the representor without knowledge as to either the truth or falsity, or [c] representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof;
>
> (3) an intention that the representor induce another to act on it; and
>
> (4) resulting injury to the party acting in justifiable reliance on the representation.

Jones v. Gen. Motors Corp., 24 F. Supp. 2d 1335, 1339 (M.D. Fla. 1998) (citation omitted); see also Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985).

Because a claim for fraudulent concealment sounds in fraud it must meet Rule 9(b)'s heightened pleading standard by "stat[ing] with particularity the circumstances constituting fraud." U.S. v. All Children's Health System Inc., No. 8:11-cv-1687, 2013 WL 1651811 at *2 (M.D. Fla. Nov. 15, 2013) (quoting Fed. R. Civ. P. 9(b)). "The particularity requirement of Rule 9(b) is satisfied if the complaint alleges 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in

them.'" Id. (quoting Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009) (quotations omitted)). However, "knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b). "The purpose of Rule 9(b) is to alert defendants to the precise misconduct with which they are charged and protect defendants against spurious charges." U.S. ex rel. Matheny v. Medco Health Solutions, Inc., 671 F.3d 1217, 1222 (11th Cir. 2012) (citations and quotation omitted). However, the Eleventh Circuit has cautioned that "a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading." Friedlander v. Nims, 755 F.2d 810, 813 (11th Cir. 1985).

Mr. Dugas specifically alleges that 3M marketed and sold its safety masks for use with asbestos and asbestos containing products. 3M conducted testing of its masks and, after reviewing the results, knew the masks did not protect against asbestos. Despite this knowledge, 3M failed to inform purchasers and users of the masks that the masks did not shield against asbestos exposure. 3M sought to maintain the popularity of its safety masks by omitting information related to the shortcomings of the masks, thus, inducing purchasers and users to continue buying and using the masks. As a result of 3M's failure to disclose the risks associated with the use of its safety masks with and around asbestos and asbestos containing products, users, like Mr. Dugas, were left with a false sense of security and were exposed to asbestos. This exposure caused Mr. Dugas to develop mesothelioma. Mr. Dugas's allegations state the relevant time period, product, and nature of 3M's concealment. Moreover, Mr. Dugas avers 3M had knowledge of its product's limitations and that 3M's concealment of its product's limitations led to his injury. Accordingly, Mr. Dugas' claim of fraudulent concealment

against 3M meets Rule 9(b)'s heightened pleading requirement. See <u>Haskin v. R.J. Reynolds Tobacco Co.</u>, 995 F. Supp. 1437, 1439 (M.D. Fla.1998).

Mr. Dugas' claims of fraudulent concealment against UTC, Shell, and IMO fail to achieve the same level of specificity found in his claim against 3M. For example, Mr. Dugas dedicates one separate paragraph for UTC, Shell, and IMO, wherein each paragraph only differs by naming a different source of Mr. Dugas's exposure to asbestos. Following the individual paragraphs, Mr. Dugas concludes his section dedicated to his fraudulent concealment claim by generally claiming that all Defendants concealed and suppressed facts of the dangers of asbestos, despite their knowledge of the dangers of asbestos in order to continue selling their products. Mr. Dugas' lumping all of Defendants together is fatal to his claim of fraudulent concealment. <u>Haskin</u>, 995 F. Supp. at 1439 ("Courts have interpreted Rule 9(b) to require plaintiffs to differentiate their allegations when suing more than one defendant, especially in a case this size, and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.") (quotations and citations omitted); <u>see also</u> <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'") (citation omitted). Mr. Dugas's claims of fraudulent concealment fail to differentiate between UTC, Shell, and IMO, other than mentioning that each was responsible for producing a different asbestos-riddled product. Mr. Dugas also fails to allege with specificity the nature of each Defendant's alleged fraudulent conduct. Therefore, Mr. Dugas' claims of fraudulent concealment against UTC, Shell, and IMO are due to be dismissed.

b. Duty to Disclose

Defendants' second argument for dismissal of Mr. Dugas' claim of fraudulent concealment is that they were not required to disclose the dangers of their asbestos containing products (or protective masks) to Mr. Dugas because they were not in privity with Mr. Dugas. The argument follows that if Defendants were not in privity with Mr. Dugas, then Defendants owed no duty of care to Mr. Dugas. Mr. Dugas never directly purchased the products at issue in this case. Instead, the Navy procured the products and Mr. Dugas, being in the Navy's employ, became their ultimate user.

The Southern District of Florida confronted a similar issue in In re Asbestos Litigation, 679 F. Supp. 1096, 1099 (S.D. Fla. 1987), wherein the defendant manufacturers asserted that the plaintiff users failed to state a claim for breach of implied warranty because there was no privity between the defendants and the plaintiffs. The court reasoned there was privity between the plaintiff users and the defendant manufacturers because the plaintiffs were foreseeable users of the product, and at the time of the distribution of the product the defendants "possessed superior knowledge as to the dangerous propensities of the products." Id. In this case, Defendants were sophisticated designers, manufactures, and distributors that provided various parts and components to the Navy for use in naval aircraft. By virtue of their positions, Defendants were far better equipped with the knowledge of the dangers of their products. Mr. Dugas, as an aircraft mechanic, was a foreseeable user of Defendants' products, and did not know, and was not in a position to know, of the dangers of Defendants' products. Owing to their relative positions, Defendants owed Mr.

Dugas a duty of reasonable care to disclose to Mr. Dugas the dangers of the foreseeable use of their products.[7]

    c.  Plaintiffs' Request for Leave to Amend

In Plaintiffs' Response, they request leave of the Court to cure any pleading defects. Initially, the Court notes such a request is improper. See Horne v. Winn Dixie, Inc., No. 306CV1068J25MCR, 2006 WL 3841798, at *3 (M.D. Fla. Dec. 11, 2006) ("[A]ll requests for relief from, or action by, the Court must be in the form of a motion."); Armington v. Dolgencorp, Inc., No. 3:07-CV-1130-J-JRK, 2009 WL 210723, at *2 (M.D. Fla. Jan. 20, 2009) ("It is not appropriate to seek an order for affirmative relief in a response to a motion.") (citing Fed. R. Civ. P. 7(b)). Even considering Plaintiffs' request to amend, however, the Court still finds amendment inappropriate.

"A plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate good cause under Fed. R. Civ. P. 16(b)." S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 (11th Cir. 2009). The Court's original Case Management and Scheduling Order set December 1, 2014 as the deadline for amendments to the pleadings. (Doc. 104; "CMSO"). The CMSO specifically invited Plaintiffs to remedy any deficiencies by the December 1, 2014 deadline, even

---

[7] Mr. Dugas' allegations that Defendants not only failed to disclose the dangers of their products, but also intentionally withheld that information to sustain demand for their products distinguishes Mr. Dugas' failure to warn claim from his fraudulent concealment claim. Mr. Dugas' fraudulent concealment claim requires that the omission of a material fact be made with intent to induce the user to alter his or her behavior, a failure to warn claim does not. See Johns-Manville Sales Corp. v. Janssens, 463 So. 2d 242, 249 (Fla. 1st DCA 1984) ("[A] manufacturer's *intentional refusal* to warn users of known dangers inherent in its products, even where the exact extent of its capacity to cause injury is not definitely known, is not unlike the tort of fraudulent misrepresentation.") (emphasis added).

though Plaintiffs had already twice amended their original Complaint [Doc. 2]. (Docs. 19 and 113). Is it now April 27, 2015, and Plaintiffs offer no showing of good cause why the Court should grant them leave to amend their Second Amended Complaint. Moreover, the amendment deadline was set in an effort to accommodate Plaintiffs' request for an expedited trial in this matter. Discovery is set to close on April 24, 2015, and the parties' Dispositive and Daubert Motions are due May 1, 2015. Thus, Plaintiffs' request to amend their Second Amended Complaint would necessarily delay resolution of this action, which has been expedited at their request.

Accordingly, after due consideration, it is

**ORDERED:**

1.   Defendants' Motions to Dismiss [Docs. 141, 145, 154, and 156] is **GRANTED in part and DENIED in part** as set forth herein.

2.   Plaintiffs' claims of fraudulent concealment against United Technologies Corporation, IMO Industries, and Shell Oil Company are **DISMISSED with prejudice**.

**DONE** and **ORDERED** in Jacksonville, Florida this 27th day of April, 2015.

_____
BRIAN J. DAVIS
United States District Judge

Mw/p

Copies furnished to:

Counsel of Record